1  LOUIS P. PETRICH (State Bar No. 38161)
   JOEL MCCABE SMITH (State Bar No. 50973)
2  DANIEL M. MAYEDA (State Bar No. 108543)
   LEOPOLD, PETRICH & SMITH, P.C.
3  2049 Century Park East, Suite 3110
   Los Angeles, California 90067-3274
4  Tel:  (310) 277-3333 • Fax: (310) 277-7444
   E-Mail:  jsmith@lpsla.com
5
   Attorneys for Defendants
6  Marc Cherry and American Broadcasting Companies, Inc.

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                   WESTERN DIVISION

11

| | |
|---|---|
| JILL BERNAL p/k/a and d/b/a JILLIAN L'AMOUR, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>PARADIGM TALENT AND LITERARY AGENCY, business entity form unknown doing business in California, MARC CHERRY, an individual, AMERICAN BROADCASTING COMPANY, INC., a corporation doing business in California; and DOES 1-50, inclusive,<br><br>Defendants. | CASE NO.: CV07-06445 SVW (PLAx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>CTRM:  6<br>DATE:  November 24, 2008<br>TIME:  1:30 p.m.<br><br>[Filed Concurrently With:<br>- Notice of Motion;<br>- Statement of Uncontroverted Facts and Conclusions Of Law in Support of Defendants' Motion for Summary Judgment;<br>- Declaration of Marc Cherry;<br>- Declaration of Andrew Patman;<br>- Declaration of Andrew Ruf;<br>- Declaration of Joel McCabe Smith;<br>- Compendium of Exhibits; and [Proposed] Judgment / Order] |

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES .............................................1

I.    INTRODUCTION ..............................................................................1

II.   THE PARTIES .................................................................................3

III.  THE WORKS ...................................................................................3

    **A.**    Defendant Cherry's "Desperate Housewives" (Ex. E) .........................3

    **B.**    Plaintiff Bernal's "Homeless" (Ex. H)...................................................4

    **C.**    This Lawsuit .............................................................................4

IV.   THE FACTS .....................................................................................5

    A.    Plaintiff's Screenplay ...............................................................5

    B.    Defendants' Teleplay ...............................................................5

    C.    Striking Dissimilarity ...............................................................6

    As detailed in the Statement, ¶21, there is no actionable similarity, whatsoever, between Plaintiff's "Homeless" screenplay and Defendant Cherry's Desperate Housewives teleplay / television series, whether measured by plot, sequence of events, characters, dialogue, setting, theme, mood or pace . Indeed, as to each and all of these elements, they are strikingly dissimilar. ...................6

    D.    Alleged "Access"...............................................................6

V.    SUMMARY JUDGMENT IS MANDATED BECAUSE PLAINTIFF CANNOT RAISE GENUINE ISSUES ON ESSENTIAL ELEMENTS OF HER CLAIM ...............................................................8

VI.   THE ACTION SHOULD BE DISMISSED......................................8

LEOPOLD, PETRICH
& SMITH
A Professional Corporation

12432

**A.**    Because Plaintiff Cannot Raise A Genuine Issue As To Unlawful Appropriation Under The "Extrinsic Test," Judgment Should Be Entered For Defendants.........................................................................12

    **1.**    No Substantial Similarity As To Plots And Sequences Of Events..................................................................................................12

    **2.**    No Substantial Similarity As To Themes ..................................12

    **3.**    No Substantial Similarity As To Characters..............................13

    **4.**    No Substantial Similarity As To Settings..................................13

    **5.**    No Substantial Similarity As To Dialogue ................................13

    **6.**    No Substantial Similarity As To Pace And Mood......................14

    **7.**    Neither A List Of Purported "Similarities" Nor Expert Extrinsic Test Testimony Can Raise A Genuine Issue For Trial .........................................................................................14

**B.**    Because Plaintiff Cannot Raise A Genuine Issue As To Actual Copying, Summary Judgment Should Be Entered For Defendants....15

    **1.**    Plaintiff's "Access" Theory Is Legally Insufficient .................15

    **2.**    Alleged Access By Marc Cherry ...............................................16

    **3.**    No Access Through Intermediaries ...........................................16

    **4.**    No "Striking Similarity" Exists To Create An Inference Of Copying In Fact..........................................................................18

    **5.**    Evidence Of Independent Creation Rebuts Any Possible Inference of Copying ...............................................................19

**VII.**    CONCLUSION.............................................................................19

LEOPOLD, PETRICH & SMITH
A Professional Corporation

12432

# TABLE OF AUTHORITIES

Page(s)

CASES

*Apple Computer, Inc. v. Microsoft Corp.*,
   35 F.3d 1435, 1442-43 (9th Cir. 1994)...............................................................10

*Arnstein v. Porter*,
   154 F.2d 464, 468-69 (2d Cir. 1946)..................................................................16

*Baxter v. MCA, Inc.*,
   812 F.2d 421, 423-24 (9th Cir. 1987).................................................................18

*Berkic v. Crichton*,
   761 F.2d 1289, 1293 (9th Cir. 1985) .................................................10, 11, 12, 14

*Brown Bag Software v. Symantec Corp.*,
   960 F.2d 1465, 1472 (9th Cir. 1992) ............................................................8, 10

*Cavalier v. Random House, Inc.*,
   298 F.3d 1228,1233 (11th Cir. 2002) ...............................................................19

*Cavalier v. Random House, Inc.*,
   297 F.3d 815, 822 (9th Cir. 2002) ..............................................................8, 10, 12

*Celotex Corp. v. Catrett*,
   477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ...............................8

*Data East USA, Inc. v. Epyx, Inc.*,
   862 F.2d 204, 206-08 (9th Cir.1988)...........................................................8, 10

*Feist Pubs., Inc. v. Rural Tele. Serv. Co.*,
   499 U.S. 340, 361, 1115 S.Ct. 1282, 113 L.Ed.2d 358 (1991) .................8, 9, 10

*Ferguson v. NBC*,
   584 F.2d 111, 113 (5th Cir. 1978) .........................................................15, 17, 18

*Fogerty v. MGM Group Holdings Corp., Inc.*
   379 F. 3d 348, 353-5 (6th Cir. 2004)............................................................8, 16

*Granite Music Corp. v. United Artists Corp.*,
   532 F.2d 718, 720 (9th Cir. 1976)...........................................................9, 15, 19

LEOPOLD, PETRICH
& SMITH
A Professional Corporation

i

*Harper & Row, Publishers v. Nation Enterprises,*
    471 U.S. 539, 556, 85 L.Ed.2d 588, 105 S.Ct. 2218 (1985) ................................1

*Harper House, Inc. v. Thomas Nelson, Inc.,*
    889 F.2d 197, 201 (9th Cir. 1989) ........................................................................10

*Hoehling v. Universal City Studios, Inc.,*
    618 F.2d 972, 977 (2d Cir. 1980) .........................................................................16

*Hofmann v. Pressman Toy Corp.,*
    790 F. Supp. 498, 505-08 (D.N.J. 1990) ..........................................15, 17, 18, 19

*Jason v. Fonda,*
    698 F.2d 966 (9th Cir. 1982) ..................................................................................8

*Jorgensen v. Epic/Sony Records,*
    351 F.3d 46, 52 (2d Cir. 2003) .......................................................................17, 18

*Keeler Brass Co. v. Continental Brass Co.,*
    862 F.2d 1062, 1066 (4th Cir. 1988) .....................................................................19

*Kouf v. Walt Disney Pictures & Television,*
    16 F.3d 1042 (9th Cir. 1994) ....................................................8, 10, 12, 13, 14

*Litchfield v. Spielberg,*
    736 F.2d 1352, 1356-57 (9th Cir. 1984).........................................................12, 14

*Mazer v. Stein,*
    347 U.S. 201, 218, 98 L.Ed. 630, 74 S.Ct. 460 (1954) .......................................15

*McGaughey v. Twentieth Century MTV Film Corp.,*
    12 F.3d 62, 64-65 (5th Cir. 1994).....................................................................15, 18

*Meta-Film Assocs., Inc. v. MCA, Inc.,*
    586 F. Supp. 1346, 1355 (C.D. Cal. 1984)......................................15, 16, 17, 18

*Metcalf v. Bochco,*
    294 F.3d 1069, 1074 (9th Cir. 2002) ....................................................................11

*Murray Hill Publ., Inc. v. Twentieth Century Fox Film Corp.,*
    361 F. 3d 312, 321 (6th Cir. 2004) ........................................................................15

*Narell v. Freeman,*
    872 F.2d 907, 911 (9th Cir. 1989) .........................................................................13

LEOPOLD, PETRICH & SMITH
A Professional Corporation

MEMORANDUM OF POINTS AND AUTHORITIES

12432

*Newton v. Diamond,*
 388 F. 3d 1189, 1192-93 (9th Cir. 2004) ............................................................10

*Nichols v. Universal Pictures Corp.,*
 45 F.2d 119, 121 (2d Cir. 1930) ........................................................................11

*Olson v. NBC,*
 855 F.2d 1446, 1450 (9th Cir. 1988) ....................................................11, 13, 14

*Positive Black Talk Inc. v. Cash Money Records, Inc.,*
 394 F. 3d 357, 368, 372 & nn. 7, 11; (5th Cir. 2004)...........................................9

*Rand v. Rowland,*
 154 F.3d 952, 956-57 (9th Cir. 1998)................................................................16

*Rice v. Fox Broadcasting Co.,*
 330 F.3d 1170, 1174 (9th Cir. 2003) ................................. 8, 10, 12, 13, 14, 18

*See v. Durang,*
 711 F.2d 141, 144 (9th Cir. 1983) ....................................................................12

*Selle v. Gibb,*
 741 F.2d 896, 903 (7th Cir. 1984) ...............................................................18, 19

*Shaw v. Lindheim,*
 809 F. Supp. 1393, 1402-04 (C.D. Cal. 1992).....................................................15

*Shaw v. Lindheim,*
 919 F.2d 1353, 1363 (9th Cir. 1990) .................................................................11

*Sid & Marty Krofft Television Prods. Inc. v. McDonald's Corp.,*
 562 F.2d 1157, 1163 (9th Cir. 1977) .............................................................11, 16

*Sinicola v. Warner Bros., Inc.,*
 948 F. Supp. 1176, 1187 (E.D.N.Y. 1996).........................................................13

*Southco, Inc. v. Kanebridge Corp.,*
 390 F. 3d 276, 285-87 (3rd Cir. 2004).................................................................13

*Three Boys Music Corp. v. Bolton,*
 212 F.3d 477, 481 (9th Cir. 2000) .....................................................................15

*Towler v. Sayles,*
 76 F.3d 579, 583 (4th Cir. 1996) ...........................................................15, 17, 18

LEOPOLD, PETRICH
& SMITH
A Professional Corporation

12432

MEMORANDUM OF POINTS AND AUTHORITIES

*Tree Pubs. Co. v. Warner Bros. Records*,
  785 F. Supp. 1272, 1275 (N.D. Tenn. 1991) ........................................13

*Warner Bros. Inc. v. ABC*,
  720 F.2d 231, 240 (2d Cir. 1983) ........................................13

*Weygand v. CBS, Inc.*,
  43 U.S.P.Q.2d 1120 (C.D. Cal. 1997) ........................................8, 9, 12, 15

*Williams v. Crichton*,
  84 F.3d 581 (2nd Cir. 1996)........................................11


STATUTES

17 U.S.C. § 102(b) ........................................9


OTHER AUTHORITIES

4 M. & D. Nimmer, *Nimmer On Copyright* ("*Nimmer*") § 13.01 at 13-5 .........10, 11

4 Nimmer, § 13.02[A] at 13-21 ........................................15

Fed. R. Civ. P. 56 ........................................8

Federal Rule of Evidence 301 ........................................19

Z. Chafee, "Reflections on the Law of Copyright," 45 *Colum.L.Rev.* 503, 513
  (1945)........................................11

LEOPOLD, PETRICH
& SMITH
A Professional Corporation

12432

MEMORANDUM OF POINTS AND AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This is a simple copyright infringement action – involving a plaintiff's screenplay and a defendant's teleplay (and subsequent television series) - except that the screenplay and the teleplay tell two completely different stories about very different characters.

Apparently, Plaintiff Jill Bernal ("Plaintiff") brings this action under the mistaken belief that the "copyright" law grants her a monopoly over ideas and storytelling / filmmaking conventions.

In support of her sole claim for Copyright Infringement, Plaintiff essentially alleges that:

- ◆ Plaintiff allegedly wrote a motion picture screenplay[1] entitled "Homeless" (Compendium of Exhibits filed and served herewith ["Compendium"] Ex. H)

- ◆ Plaintiff sent her "Homeless" screenplay, unsolicited, to former defendant Paradigm Talent and Literary Agency ("Paradigm"), a theatrical agency that represented an actor – named Billy Zane – that Plaintiff wanted to "attach" to her screenplay (Compendium Ex. J);

- ◆ Defendant Marc Cherry created and wrote a teleplay entitled *Desperate Housewives* (Compendium Ex. E);

- ◆ After Plaintiff had allegedly sent her screenplay to Paradigm, a Hollywood production company, Touchstone Television, agreed to purchase and produce a teleplay entitled "Desperate Housewives" conceived, created and written by Defendant Cherry, and Defendant American Broadcasting Companies, Inc. (ABC) agreed to telecast it (Compendium Ex. G); and

---

[1] The term "screenplay" generally refers to a writing intended to be filmed for exhibition in a motion picture. A "teleplay" generally refers to a writing intended to be filmed for exhibition on television.

LEOPOLD, PETRICH & SMITH
A Professional Corporation

12432

1        ♦   Three years to the day after the pilot episode of *Desperate Housewives* aired

2           on network television Plaintiff filed this suit[2] claiming, essentially, that the

3           *Desperate Housewives* television series is a "picturization" of the

4           "Homeless" screenplay.

5        Nothing could be further from the truth, as this Motion will demonstrate.

6        First of all, *Desperate Housewives* is not similar, in any respect, to any

7 protected expression in "Homeless." Instead, the two tell very different stories, from

8 very different perspectives, using very different characters acting out very different

9 plot points.

10       Second, there is absolutely no evidence supporting Plaintiff's assumption that

11 Marc Cherry, the creator of *Desperate Housewives,* ever had "access" to the

12 "Homeless" screenplay at any time or copied any part of it.

13       Thus, this Court may and should dismiss Plaintiff's claim under either or both

14 of two analyses:

15       <u>First</u>, when the Court compares the expressive elements of the two works the

16 Court will conclude that, given the pervasive differences in their plots, event

17 sequences, characters, dialogue, setting, mood, pace and theme, Defendants'

18 *Desperate Housewives* teleplay is clearly not substantially similar to any original

19 protectible expression contained in Plaintiff's "Homeless" screenplay; and/or

20       <u>Second</u>, in addition or otherwise, the Court will conclude that Plaintiff is unable

21 to raise a genuine issue that Defendants "copied" Plaintiff's screenplay because (a) no

22 substantive evidence exists that Defendant Cherry, the creator of Defendants'

23 *Desperate Housewives,* had "access" to Plaintiff's "Homeless" screenplay <u>before</u> he

24 created *Desperate Housewives*, and (b) the works are not so "strikingly similar" as to

25 create an <u>inference</u> of "access" in the absence of substantial <u>evidence</u> of access.

26

27

28

---

[2] The statute of limitations on a copyright infringement action is … 3 years. 17 U.S.C § 507.

LEOPOLD, PETRICH & SMITH
A Professional Corporation

2

12432

1    Under either theory, Defendants are entitled to summary judgment dismissing

2    this action with prejudice.

3    **II.    THE PARTIES**

4    Defendant Marc Cherry created "Desperate Housewives." For the last 20 years

5    he has been a working writer in the entertainment industry and has been credited as a

6    creator and/or writer (and has been paid for having done so) on over 40 television

7    projects.  Statement of Uncontroverted Facts and Conclusions of Law ("Statement"),

8    ¶ 22 through 25.

9    The Plaintiff is Jill Bernal. She has never been paid any money for writing

10   anything, "nor has she even been a member of any writers' or producers' or directors'

11   guild."  Smith Decl. ¶ 5(b) and 5(c).

12   **III.    THE WORKS**

13   The works are described in detail in Defendants' Statement of Uncontroverted

14   Facts and Conclusions of Law filed with this Motion.

15         **A.    Defendant Cherry's "Desperate Housewives" (Ex. E)**

16   As detailed in the Declaration of Marc Cherry in support of this Motion, the

17   idea for *Desperate Housewives* first came to him during a visit to his mother's house

18   in Orange County, California in the early in the summer of 2001.  Together they were

19   watching television coverage of the Andrea Yates case, the mother who had killed her

20   five young children. Cherry commented to his Mother "Gosh, can you imagine a

21   woman being so desperate that she would hurt her own children?"  To which his

22   mother responded, "Yeah, I've been there."

23   What Defendant Cherry learned from his Mother was a revelation to him and he

24   realized that, to his knowledge, no one had ever written about the desperation of

25   ordinary women who were living the lives that they chose for themselves, but weren't

26

27

28

1   quite making a go of it.  And he thought he needed to write about this. And *Desperate*

2   *Housewives* is what he created and wrote.[3]

3         He began writing the pilot toward the end of summer / beginning of fall of

4   2001.  By the fall of 2002 - before Plaintiff Bernal even claims she sent the

5   "Homeless" screenplay to Paradigm - Defendant Cherry had written no fewer than

6   five drafts of his "Desperate Housewives" teleplay. Statement ¶ 10.

7         **B.**   **Plaintiff Bernal's "Homeless" (Ex. H)**

8         Plaintiff Bernal claims that she wrote her "Homeless" screenplay in 1988 and

9   sent it to Paradigm in or about April 2003 (Statement ¶ 8; Complaint ¶¶ 10 and 15).

10         When Plaintiff Bernal claims she sent her "Homeless" screenplay to Paradigm,

11   she claims she did so under cover of a letter in which she described her screenplay as

12   "a romantic drama about a woman who takes in a homeless man and rehabilitates him

13   so he can return to his job as an airline pilot." Compendium Ex. J.  That, of course, is

14   not the "story" of "Desperate Housewives."

15         **C.**   **This Lawsuit**

16         It was three years into the airing of "Desperate Housewives" television series

17   before Plaintiff Bernal sued herein claiming "Desperate Housewives" infringed her

18   "Homeless" screenplay. No wonder, in her Complaint, Plaintiff Bernal did not

19   describe her screenplay as "a romantic drama about a woman who takes in a homeless

20   man and rehabilitates him so he can return to his job as an airline pilot," as she had

21   before she knew about "Desperate Housewives." Instead, after 39 episodes of the

22   Desperate Housewives television series had aired, Plaintiff Bernal described her

23   "Homeless" screenplay in her copyright infringement complaint as "a

24   'drama/comedy' [that] revolves around the interactions of several neighbors on a quiet

25   suburban street, following the suicide death of a neighbor woman … who leaves

26   behind an estranged spouse …"  Statement ¶ 20; Complaint ¶ 12.

27

28

---

[3] The creative details are outlined in considerably more detail in Defendant Cherry's Declaration in support of this Motion.

## IV.    THE FACTS

The following are uncontroverted facts shown by the evidence or are "facts" assumed by Defendants for sake of argument.

### A.    *Plaintiff's Screenplay*

Plaintiff Bernal claims to have written her "Homeless" screenplay in or about 1988. (Statement ¶ 8)

By her own description - <u>before</u> she knew of *Desperate Housewives* -  it is a "romantic drama about a woman who takes in a homeless man and rehabilitates him so he can return to his job as an airline pilot." Statement ¶ 18.

Plaintiff Bernal claims that in late April 2003 she mailed a copy of her "Homeless" screenplay to [former] Defendant Paradigm.  Statement ¶ 12.

At the time she alleges she mailed her screenplay to Paradigm, Defendant Cherry was represented by Paradigm. Statement ¶ 13.

Plaintiff Bernal's <u>evidence</u> that Defendant Cherry had "access" to her screenplay and copied is <u>simply</u> that (1) "the similarities [in the two] speak to [her]" and (2) Cherry "was represented by Paradigm."  Statement ¶ 14; Compendium Ex. I ["Rough Transcript of Bernal deposition], pg. 89, ln. 17 – pg. 90, ln. 1.

### B.    *Defendants' Teleplay*

Defendant Cherry had created the teleplay for *Desperate Housewives* by September 2002 . . . several months before Plaintiff Bernal even claims she mailed a copy of her "Homeless" screenplay to Paradigm.  Statement ¶¶ 10-11. Indeed, in the fall of 2002 . . . again, before Plaintiff Bernal even claims she mailed her "Homeless" screenplay to Paradigm . . . Defendant Cherry's agent at Paradigm, Patman, had sent Cherry's completed teleplay to several producers, television networks, and financiers for consideration as a work to produce and telecast.  Patman Decl. ¶ 16; Compendium Ex. L.

Indeed, Defendant Cherry has articulated, in detail, the creative process preceding his creation of the *Desperate Housewives* teleplay.  Cherry Decl. ¶ 4.

## C.    *Striking Dissimilarity*

As detailed in the Statement, ¶21, there is no actionable similarity, whatsoever, between Plaintiff's "Homeless" screenplay and Defendant Cherry's *Desperate Housewives* teleplay / television series, whether measured by plot, sequence of events, characters, dialogue, setting, theme, mood or pace . Indeed, as to each and all of these elements, they are strikingly dissimilar.

## D.    *Alleged "Access"*

Of course, Defendant Cherry's *Desperate Housewives* teleplay/ television series cannot infringe any copyright in Plaintiff Bernal's <u>Homeless</u> screenplay unless Defendant Cherry had "access" to Plaintiff Bernal's screenplay prior to or at the time that Defendant Cherry created *Desperate Housewives*; without such access, there could not have been any copying whatsoever. So what is Plaintiff Bernal's evidence of access? Plaintiff Bernal answers the question in her Complaint:

- ▪ She sent her screenplay to a theatrical agency, Defendant Paradigm, to try to get a particular actor "attached" to it;

- ▪ Among the scores of writers the theatrical agency represented at the time was the creator of *Desperate Housewives*, Marc Cherry.

From that, <u>and</u> <u>that</u> <u>alone</u>, Plaintiff Bernal argues that Defendant Cherry must have had "access" to "Homeless" <u>and</u> must have copied it.

Neither those facts nor the controlling law even permit an <u>inference</u> of "access," much less a <u>finding</u> of "access," sufficient to support a claim of copyright infringement, particularly since the creator of *Desperate Housewives*' denies ever having knowledge of Plaintiff or the Plaintiff's "Homeless" screenplay before this lawsuit was filed.  Statement ¶¶ 25 through 29; Cherry Decl. ¶¶ 9-11.

Furthermore, the only evidence that Plaintiff Bernal has to support her claim that she sent a copy of her screenplay to Paradigm in April 2003 <u>is</u> <u>her</u> <u>testimony</u> that

LEOPOLD, PETRICH
& SMITH
A Professional Corporation

12432

1  a copy of her "Homeless" screenplay <u>accompanied</u> a letter she sent to Paradigm.

2  (Statement ¶ 12; Smith Decl. ¶ 5(h); Exhibit Compendium Ex. J).[4]

3      However, the person at Paradigm to whom Plaintiff Bernal claims she sent her

4  "Homeless" screenplay in 2003, Andrew Ruf, denies ever having received it.  Indeed,

5  Ruf has no recollection of ever having any contact, whatsoever, with Plaintiff Bernal,

6  has no recollection of ever receiving a screenplay from Plaintiff Bernal entitled

7  "Homeless" (or any other title) and has no recollection of ever speaking with Plaintiff

8  Bernal about anything whatsoever.  Ruf Decl. ¶6(a) – (c).

9      Defendant Cherry's agent at Paradigm, Andy Patman, has also testified that he

10  never, at any time, gave to Defendant Cherry any screenplay conceived or written by

11  some other writer, whether entitled "Homeless" or otherwise, or whether written by

12  Plaintiff Bernal or anyone else.  Patman Decl. ¶ 6(d).

13      In addition, according to Paradigm, the policy at that agency at that time was

14  that agents (or Paradigm) never gave any writer represented by Paradigm any material

15  written by some other writer.  Thus, at no time did Ruf or Patman give to (or instruct

16  anyone else to give to) any writer represented by Paradigm, be it Marc Cherry or

17  otherwise (or any intermediary for any such writer), any screenplay written by some

18  other writer, including, without limitation, any screenplay entitled "Homeless" or any

19  other work written by Plaintiff Bernal or anyone else.  *See* Ruf Decl. ¶6(d); Patman

20  Decl. ¶6(d).

21      Most importantly, Plaintiff Bernal concedes – as she must – that she made no

22  direct submission to and had no direct contact with defendants Marc Cherry or ABC.

23      *Desperate Housewives* premiered on the ABC television network on October 3,

24  2003. Statement ¶ 15.After viewing some of the episodes, Plaintiff concluded that her

25  "Homeless" screenplay had been infringed by *Desperate Housewives,* but she waited

26

27  ───────────────

28  [4] Interestingly, the letter Plaintiff Bernal supposedly sent to Paradigm [Compendium,
    Ex. J] does <u>not</u> state that it enclosed a copy of her "Homeless" screenplay. Letters to
    others, produced by Plaintiff Bernal in this suit, that did apparently enclose her
    screenplay, said so. *See* Compendium, Ex. M.

three (3) years to the day – after the airing of the initial episode of "Desperate
Housewives" – to sue. Statement ¶ 16.

## V.   SUMMARY JUDGMENT IS MANDATED BECAUSE PLAINTIFF CANNOT RAISE GENUINE ISSUES ON ESSENTIAL ELEMENTS OF HER CLAIM

Fed. R. Civ. P. 56 "mandates the entry of summary judgment . . . against the
party who fails to make a showing sufficient to establish the existence of an element
essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct.
2548, 91 L.Ed.2d 265 (1986).  Where the plaintiff has the burden of proof, defendants
need only point out the relevant issues for which plaintiff has no substantive evidence
and the burden shifts to the plaintiff to furnish substantive evidence sufficient to raise
a triable issue of fact. *Ibid*.  Plaintiff does not create triable issues simply by calling
into question the credibility of defense witnesses. *Fogerty v. MGM Group Holdings
Corp., Inc*. 379 F. 3d 348, 353-5 (6th Cir. 2004).

In copyright actions, summary judgment is often granted where the plaintiff is
unable to raise a genuine issue either that defendants (1) had "access" to her work <u>or</u>
(2) "appropriated" her copyright-protected expression.  *See Rice v. Fox Broadcasting
Co.*, 330 F.3d 1170, 1174 (9th Cir. 2003); *Kouf v. Walt Disney Pictures & Television*,
16 F.3d 1042 (9th Cir. 1994); *Jason v. Fonda*, 698 F.2d 966 (9th Cir. 1982); *Weygand
v. CBS, Inc.*, 43 U.S.P.Q.2d 1120 (C.D. Cal. 1997).

## VI.   THE ACTION SHOULD BE DISMISSED

To establish a <u>prima facie</u> case of infringement, a plaintiff must present
substantial evidence that she owns a copyright and that the defendants have
(1) actually copied (2) original protected expression from the plaintiff's copyrighted
work. *Feist Pubs., Inc. v. Rural Tele. Serv. Co.*, 499 U.S. 340, 361, 1115 S.Ct. 1282,
113 L.Ed.2d 358 (1991); *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir.
2002); *Kouf*, 16 F.3d at 1044 n.2; *Brown Bag Software v. Symantec Corp.*, 960 F.2d
1465, 1472 (9th Cir. 1992); *Data East USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 206-08

1  (9th Cir.1988); *Weygand*, 43 U.S.P.Q.2d at 1122; 4 M. & D. Nimmer, *Nimmer On*

2  *Copyright*, ("*Nimmer*") § 13.01 at 13-5 to -6 (2005).

3     For purposes of this Motion only, Defendants assume that Plaintiff owns a valid

4  U.S. copyright to the "Homeless" Screenplay, *i.e.*, that the "Homeless" screenplay

5  was created by Plaintiff Bernal, and that copyright in the "Homeless" screenplay has

6  not been transferred to a third party. 4 *Nimmer*, § 13.01[A] at 13-6 to -8. What

7  remains to be determined, however, is the issue of "copying" of protected expression -

8  which itself requires that Plaintiff prove two distinct elements: <u>actual copying</u> and

9  <u>unlawful appropriation</u>. 4 *Nimmer*, § 13.01[B] at 13-8 to -10.

10    <u>The actual copying element</u> focuses on "the <u>factual</u> question whether the

11  defendant, in creating his work, used the plaintiff's material as a model, template, or

12  even inspiration." 4 *Nimmer*, § 13.01[B] at 13-8 (emphasis added). An <u>inference</u> of

13  this type of copying could arise from evidence, if it existed, (1) that the <u>creator</u> of

14  defendants' work "Desperate Housewives" had <u>access</u> to Plaintiff's work "Homeless"

15  at the relevant times; and (2) that the works in question are substantially similar.[5] 4

16  *Nimmer*, § 13.01[B] at 13-8 to -14. If actual copying - derivation - did not occur,

17  there can be no infringement, even if the works in question are identical. *Granite*

18  *Music Corp. v. United Artists Corp.*, 532 F.2d 718, 720 (9th Cir. 1976); see also *Feist*,

19  499 U.S. at 345-46; 4 *Nimmer*, § 13.01[B] at 13-10.

20    <u>The unlawful appropriation element</u> focuses on the <u>legal</u> issue of whether any

21  alleged copying extended beyond <u>unprotectable</u> facts, concepts or ideas (17 U.S.C.

22  § 102(b)) to Plaintiff's <u>protectible expression</u> - "the actual concrete elements that

23

---

24  [5]    The *Nimmer* treatise and many courts now prefer to describe this factual issue
25  as "<u>probative</u> similarity" to distinguish the use of the same phrase "<u>substantial</u>
      <u>similarity</u>" in the <u>unlawful appropriation issue</u>. 4 *Nimmer*, § 13.01[B] at 13-12 & n.
      31.1. The term "probative similarities" avoids the ambiguity arising from some
26  courts' use of the term "substantial similarity" to refer to both the "actual copying"
      and the "unlawful appropriation" inquiries. <u>The distinction matters</u>. For example,
27  when two work use the same but incorrect date for an historical fact – e.g., "1542" for
      the discovery of America by Columbus – such use might indicate actual copying but
28  not improper appropriation. *See Positive Black Talk Inc. v. Cash Money Records,*
      *Inc.*, 394 F. 3d 357, 368, 372 & nn. 7, 11; (5th Cir. 2004) (notes that 9th Circuit seems
      to conflate these inquiries).

1    make up the total sequence of events and the relationships between the major

2    characters." *Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985). In the Ninth

3    Circuit, this issue is determined by applying the "extrinsic test," which analytically

4    dissects the work's objective elements of expression and filters out claimed

5    "similarities" in unprotectable elements, such as facts, ideas, clichés, *scenes-à-faire*,[6]

6    and conventions of story-telling and filmmaking. *Rice*, 330 F.3d at 1174-75;

7    *Cavalier*, 297 F.3d at 823; *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435,

8    1442-43 (9th Cir. 1994); *Kouf*, 16 F.3d at 1045; *Brown Bag*, 960 F.2d at 1475-77;

9    *Data East*, 862 F.2d at 208-10; *Berkic*, 761 F.2d at 1293; 4 *Nimmer*, § 13.03[A][1] &

10    [B][2]-[4] at 13-33 to -43 & 67 to -77.[7]

11        Neither "access" nor actual copying is relevant to whether a defendant's work is

12    substantially similar to protected expression in plaintiff's work (hereafter "substantial

13    similarity").[8] 4 *Nimmer*, § 13.03[D] at 13-89 to 92. *See Newton v. Diamond*, 388 F.

14    3d 1189, 1192-93 (9th Cir. 2004) (affirming *de minimis* holding) ("even where the fact

15    of copying is conceded, no legal consequences will follow from that fact unless the

16    copying is substantial").

17        When, as in this case, <u>non-identical works are compared</u>, the substantial

18    similarity inquiry involves a legal or policy issue: how far beyond the literal may

19    plaintiff's copyright monopoly extend. *Harper House, Inc. v. Thomas Nelson, Inc.*,

20    889 F.2d 197, 201 (9th Cir. 1989); 4 *Nimmer*, § 13.03[A][1] at 13-36 to -38. If a

21    plaintiff were allowed to extend her monopoly too far, liability would be imposed for

22    the "use" of unprotected ideas and facts – rather than protected expression – in

23    violation of the First Amendment and copyright policy. *Feist*, 499 U.S. at 344-48,

24

---

25    [6]    Scenes-á-faire, or situations/incidents that flow necessarily/naturally from a
   basic plot premise, cannot sustain a finding of infringement. *Cavalier*, 297 F.3d at

26    823.
   [7]    "[T]he mere fact that a work is copyrighted does not mean that every element of

27    the work may be protected." *Feist*, 499 U.S. at 348; 4 *Nimmer*, § 13.01[B] at 13-8 to -
   10. "[S]imilarities . . . confined to ideas and general concepts . . . are noninfringing."

28    *Data East*, 862 F.2d at 208; *Feist*, 499 U.S. at 361; 4 *Nimmer*, § 13.01[B][2] at 13-59
   to -63.
   [8]    *Feist*, 499 U.S. at 361 ("Not all copying, however, is copyright infringement").

LEOPOLD, PETRICH & SMITH
A Professional Corporation

12432

1  349-50; *Harper & Row, Publishers v. Nation Enterprises*, 471 U.S. 539, 556, 85

2  L.Ed.2d 588, 105 S.Ct. 2218 (1985) (the idea/expression dichotomy strikes a

3  constitutional balance between copyright and free speech interests).

4  　　Because storytelling necessarily relies on the use of facts, ideas, clichés, scenes

5  a faire, conventions of story-telling and filmmaking not original to its author, *see*

6  *Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002), a plaintiff's dramatic work is

7  only protected from nearly verbatim copying of dialogue or from the comprehensive

8  non-literal copying of its "story"[9] or "pattern,"[10] the original arrangement of

9  characters, their relationships and the essential sequence of events, 4 *Nimmer*, §

10  13.03[A] [l][b]; *Williams v. Crichton*, 84 F.3d 581 (2nd Cir. 1996) at 588-91; *Berkic*,

11  761 F.2d at 1293-94; <u>Olson v. NBC</u>, 855 F.2d 1446, 1450 (9th Cir. 1988); *Shaw v.*

12  *Lindheim*, 919 F.2d 1353, 1363 (9th Cir. 1990) ("Shaw I"); 4 *Nimmer*, § 13.03[A][1]

13  & [2] at 13-33 to -43 & 13-53 to -59.

14  　　To determine "substantial similarity" between works that are not literally the

15  same, the Ninth Circuit employs an "extrinsic" (<u>i.e.</u> objective) and an "intrinsic" (<u>i.e.</u>,

16  subjective) test, originated in *Krofft*.[11] 4 *Nimmer*, § 13.03[E][3] at 13-108 to –111.

17  Under the extrinsic test, the court or trier of fact must first "list and analyze" "specific

18  criteria" (8 factors for literary and dramatic work) in each work on an objective basis

19

20

---

9　　Regarding non-identical dramatic work, Judge Hand explained in *Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121 (2d Cir. 1930):

　　　Upon any work, ... a great number of patterns of increasing generality will fit equally well, as more and more of the incident is left out. ... but there is a point in this series of abstractions where they are no longer protected, since otherwise the [author] could prevent the use of his 'ideas,' to which, apart from their expression, his property is never extended.

(quoted in *Sid & Marty Krofft Television Prods. Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1163 (9th Cir. 1977) ("<u>Krofft</u>").

10　　Professor Chafee famously further refined the boundary between idea and expression, stating that "protection [of a dramatic work] covers the 'pattern' of the work ... the sequence of events and the development of the interplay of characters." Z. Chafee, "Reflections on the Law of Copyright," 45 *Colum.L.Rev.* 503, 513 (1945) quoted in *Williams*, 84 F.3d at 588 and cited in *Krofft*, 562 F.2d at 1164.

11　　Under *Krofft*, the extrinsic test was said to compare "ideas." Beginning with *Shaw I*, 919 F.2d at 1356-57, the Ninth Circuit applies both tests to "expression."

LEOPOLD, PETRICH
& SMITH
A Professional Corporation

12432

1  and then compare work with reference to those factors to determine if they are similar

2  in "expression." *Rice*, 330 F.3d at 1174 (9th Cir. 2003); <u>Krofft</u>, 562 F.2d at 1164;

3  *Kouf*, 16 F.3d at 1045. "[T]his question may often be decided as a matter of law."

4  *Krofft, supra.*

5     **A.    Because Plaintiff Cannot Raise A Genuine Issue As To Unlawful**

6     **Appropriation Under The "Extrinsic Test," Judgment Should Be**

7     **Entered For Defendants**

8          Summary judgment is appropriate because Plaintiff cannot raise a genuine issue

9  as to substantial similarity of <u>protectible</u> <u>expression</u> under the extrinsic test. *Cavalier*,

10  297 F.3d at 824; *Kouf*, 16 F.3d at 1045; *Berkic*, 761 F.2d at 1293; *Weygand*, 43

11  U.S.P.Q.2d at 1125; *See v. Durang*, 711 F.2d 141, 144 (9th Cir. 1983).

12     **1.    No Substantial Similarity As To Plots And Sequences Of**

13     **Events**

14          As demonstrated in the Statement, none of the plots nor sequences of events of

15  *Desperate Housewives* teleplay are substantially similar to protected expression in

16  Plaintiff's screenplay.  Statement ¶ 21, 1 & 2.  The common elements in the event

17  sequences are simply not protectible by copyright. *Berkic*, 761 F.2d at 1293;

18  *Litchfield v. Spielberg*, 736 F.2d 1352, 1356-57 (9th Cir. 1984).

19          In addition to the substantially different sequences of events, the stories have

20  quite different plots.  In addition to the plot lines, the works also include secondary

21  subplots such as "romances," which bear no similarity to one another.  In fact, to the

22  limited extent that there may be said to be any plot-related parallels between the

23  stories when they are considered at high levels of abstraction, any such parallels break

24  down as soon as *Desperate Housewives* and "Homeless" are compared at the requisite

25  level of <u>expression</u>

26     **2.    No Substantial Similarity As To Themes**

27          Although the works may share hackneyed thematic elements (Statement ¶21,

28  6), such hackneyed thematic elements are not protectible by copyright.

### 3.   No Substantial Similarity As To Characters

Characters are not, as a general rule, protectible under copyright law, particularly when the characters are not significantly developed.  Still, the traits and experiences of the characters in one or more works are among the factors that courts frequently consider as part of an analysis of whether two works are substantially similar for purposes of copyright law.  *Rice*, 330 F.3d at 1175; *Kouf*, 16 F.3d at 1046; Olson, 855 F.2d at 1451-52; *Warner Bros. Inc. v. ABC*, 720 F.2d 231, 240 (2d Cir. 1983); *Sinicola v. Warner Bros., Inc.*, 948 F. Supp. 1176, 1187 (E.D.N.Y. 1996).  In this case, the characters in the works are wholly dissimilar.

As demonstrated in the Statement, there are no character "pairings" that are substantially similar between Defendant Cherry's *Desperate Housewives* teleplay and Plaintiff Bernal's "Homeless" teleplay.  There is simply nothing substantially similar in the personalities, personal stories, characteristics, character arcs, or any other significant aspects of characters in Plaintiff Bernal's "Homeless" and Defendant Cherry's *Desperate Housewives*.  Statement ¶ 21, 4.

### 4.   No Substantial Similarity As To Settings

The settings of *Desperate Housewives* and "Homeless" are not substantially similar just because both works purportedly take place in a small town.

The settings of the Script, by contrast, are delineated far less specifically, and are substantially different.  Statement ¶ 21, 3.

### 5.   No Substantial Similarity As To Dialogue

There are no similarities regarding any dialogue, common terms or short phrases.  Statement ¶ 21, 5.  Even were there any such similarities, short or ordinary phrases are not entitled to copyright protection.  *See, e.g., Southco, Inc. v. Kanebridge Corp.*, 390 F. 3d 276, 285-87 (3rd Cir. 2004); *Narell v. Freeman*, 872 F.2d 907, 911 (9th Cir. 1989); *Tree Pubs. Co. v. Warner Bros. Records*, 785 F. Supp. 1272, 1275 (N.D. Tenn. 1991).  Moreover, where there are limited ways of expressing an idea or

1   an action, idea and expression are merged and not protected by copyright.  <u>Rice</u>, 330

2   F.3d at 1174-75.

### 6.    No Substantial Similarity As To Pace And Mood

4         The pace and mood of Defendant Cherry's *Desperate Housewives* and Plaintiff

5   Bernal's "Homeless," respectively, are common to the particular story and do not

6   constitute evidence of copying.  Statement ¶ 21, 7 and 8.

7         Plaintiff Bernal's "Homeless" work, though, is a realistic drama, love story, tale

8   of redemption.  Defendant Cherry's *Desperate Housewives* is a "night-time soap

9   opera," with characters bigger than life, storylines that become comically convoluted,

10  and many apparently dramatic moments played for comedy.  Similarities of mood and

11  pace that are "common to [a] genre," are unprotectable and "do not demonstrate

12  substantial similarity."  *See* <u>Olson</u>, 855 F.2d at 1451.

### 7.    Neither A List Of Purported "Similarities" Nor Expert Extrinsic Test Testimony Can Raise A Genuine Issue For Trial

15        Defendants anticipate the Opposition to this Motion will include "lists" of

16  purported similarities.

17        In the Ninth Circuit, as a matter of law, the compilations of random elements

18  and abstractions found in lists of alleged "similarities" are insufficient to raise a

19  genuine issue of fact.  *Kouf*, 16 F. 3d at 1046; *Litchfield*, 736 F. 2d at 1356; *See* 711 F.

20  2d at 144.  Such out-of-sequence comparisons mischaracterize the work, and fail to

21  encompass the "pattern" that copyright protects - *i.e.*, "the actual concrete elements

22  that make up the total sequence of events and relationships between the major

23  characters." *Berkic*, 761 F.2d at 1293.

24        Nor may a similarity "expert" create a genuine issue as to substantial similarity

25  which does not exist.  Because dramatic work speak for themselves, and are the best

26  evidence of their contents, courts frequently disregard such expert testimony,

27  especially when it improperly relies on similarities of idea, scenes-a-faire, and other

28  forms of unprotected expression. *See Rice*, 330 F. 3d at 1179-80; *Olson*, 855 F. 2d at

1450; *Murray Hill Publ., Inc. v. Twentieth Century Fox Film Corp.*, 361 F. 3d 312,
321 (6th Cir. 2004); *Shaw v. Lindheim*, 809 F. Supp. 1393, 1402-04 (C.D. Cal. 1992)
(granting JNOV after remand) ("Shaw II").

### B.  Because Plaintiff Cannot Raise A Genuine Issue As To Actual Copying, Summary Judgment Should Be Entered For Defendants

Even if *Desperate Housewives* and "Homeless" were identical, no infringement
exists unless the similarities resulted from actual copying of plaintiff's work.
*Mazer v. Stein*, 347 U.S. 201, 218, 98 L.Ed. 630, 74 S.Ct. 460 (1954); *Granite Music*,
532 F. 2d 718, 720 (9th Cir. 1976); 4 *Nimmer* §13.01(B) at 13-10.

Plaintiff's claim of <u>actual copying</u> depends on inferential proof.  Plaintiff must
present substantive evidence that (a) Defendant Cherry, the creator of Defendants'
*Desperate Housewives,* had "access" - *i.e.*, a reasonable opportunity to copy Plaintiff's
"Homeless" screenplay <u>before</u> creating Defendants' *Desperate Housewives* - and that
the works share similarities that are "probative" of copying (*Three Boys Music Corp.
v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000)), or (b) the works at issue are so
"strikingly similar" that "proof of access is presumed."  *Id.* at 484; *Meta-Film Assocs.,
Inc. v. MCA, Inc.*, 586 F. Supp. 1346, 1355 (C.D. Cal. 1984); *Weygand*, 43
U.S.P.Q.2d at 1122.

### 1.  Plaintiff's "Access" Theory Is Legally Insufficient

To raise a genuine issue of "access," Plaintiff must present substantial evidence
- not speculation or conjecture - that the <u>creator</u> of Defendants' Work had "a
<u>reasonable</u> opportunity to view" Plaintiff's work <u>before</u> creating Defendants' work.
*Three Boys*, 212 F.3d at 482 (emphasis added); *Jason*, 698 F.2d at 966-67; *Meta-Film*,
586 F. Supp. at 1355; *Towler v. Sayles*, 76 F.3d 579, 583 (4th Cir. 1996);
*McGaughey v. Twentieth Century MTV Film Corp.*, 12 F.3d 62, 64-65 (5th Cir. 1994);
*Ferguson v. NBC*, 584 F.2d 111, 113 (5th Cir. 1978).  A "<u>bare possibility</u>" of access is
<u>insufficient</u>.  *Jason*, 698 F.2d at 967; *Towler*, 76 F.3d at 582; *Ferguson*, 584 F.2d at
113; *Meta-Film*, 586 F. Supp. at 1355; *Hofmann v. Pressman Toy Corp.*, 790 F. Supp.

498, 505-08 (D.N.J. 1990), *aff'd* 947 F.2d 935 (3d Cir. 1991); 4 <u>Nimmer</u>, § 13.02[A] at 13-21 ("Access may not be inferred through mere speculation or conjecture").

### 2.    Alleged Access By Marc Cherry

Plaintiff's "belief" that Paradigm "gave" her screenplay to Defendant Cherry is of no probative value. No reasonable fact-finder could credit a "belief"– which, by its nature, could be wrong. Plaintiff's belief is simply not enough to require a trial. It creates no credibility issue. *See Fogerty, supra*, 379 F.3d at 353-55.

This speculative access theory is reminiscent of the now discredited "slightest doubt" rule in *Arnstein v. Porter*, 154 F.2d 464, 468-69 (2d Cir. 1946). *Arnstein* held that plaintiff's supposition – that Cole Porter hired "stooges" to ransack Arnstein's apartment to get access to his musical compositions – created the "slightest doubt" about access and defeated summary judgment. Fortunately, *Arnstein's* "slightest doubt" summary judgment standard has been abandoned by the Second Circuit, and discredited elsewhere, including the U.S. Supreme Court. *See Rand v. Rowland*, 154 F.3d 952, 956-57 (9th Cir. 1998); *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 977 (2d Cir. 1980); *Krofft*, 562 F.2d at 1165.

### 3.    No Access Through Intermediaries

Plaintiff Bernal does not even claim that Defendant Cherry had "access" directly from her. On the contrary, Plaintiff Bernal claims that Defendant Cherry had access through an intermediary: his agent at Paradigm (Patman), who got it from another agent at Paradigm (Ruf, who represented actor Billy Zane, not Marc Cherry), who got a copy of the "Homeless" screenplay from Plaintiff Bernal. In other words, Plaintiff Bernal contends that Defendant Cherry had access to her "Homeless" screenplay through "intermediaries." That claim fails both factually and legally.

In *Meta-Film*, the seminal case on "access" through intermediaries, the Court held that the plaintiff's submission of its script FRAT RAT to a director under contract to defendant Universal, who maintained an office at Universal, failed to

1  create a genuine issue that Universal had "access" to FRAT RAT when it produced

2  the allegedly infringing film ANIMAL HOUSE.  *Meta-Film*, 586 F. Supp. at 1357-58.

3  Instead, Judge Pfaelzer held that such claims of access require a "nexus between the

4  defendant and the individual possessing knowledge of the plaintiff's work" (*Id.* at

5  1355 (emphases added) under which:

6        The 'intermediary,' the person who had viewed plaintiff's work and was

7        therefore in a position to transmit it to the copier, either was [1] a

8        supervisor with responsibility for the defendant's project, [2] was part of

9        the same work unit as the copier, or [3] contributed creative ideas or

10       material to the defendant's work."

11  *Id.* at 1355-56 (emphases and bracketed numbers added).  "[A]t a minimum, the

12  dealings between the intermediary and the alleged copier must involve some overlap

13  in subject matter to permit an inference of access."  *Id.* at 1358 (emphasis added).

14  *Meta-Film* has been widely adopted.  *See, e.g., Jorgensen v. Epic/Sony Records*, 351

15  F.3d 46, 52 (2d Cir. 2003); *Towler v. Sayles*, 76 F.3d at 579, 583 (4th Cir. 1996).

16       Here, Plaintiff Bernal's "access" theory is based on exactly the same kind of

17  conjectural "bare possibility" that the Court rejected in *Meta-Film*.  Ruf, to whom

18  Plaintiff Bernal's "Homeless" screenplay was purportedly sent, did not provide ideas

19  or literary materials, or have any involvement, or received any credit in connection

20  with the creation or development of Defendants' *Desperate Housewives* television

21  series. *See Meta-Film*, 586 F. Supp. at 1355-56. Thus, under *Meta-Film*, plaintiffs'

22  speculation, as a matter of law, is insufficient.  *See, also Ferguson v. NBC*, 584 F.2d

23  111, 113 (5th Cir. 1978); *Hofmann*, 790 F. Supp. at 507-08.

24       To the extent that plaintiff relies on a "corporate receipt" theory of access (that

25  receipt by one employee of a company is "receipt" by every employee), that theory

26  was rejected in *Meta-Film, supra*, and most recently by the Second Circuit, in

27  *Jorgensen*, 351 F. 3d at 53 & n. 5.

28

In the light of the denials of access to the <u>Homeless</u> screenplay by the creator of *Desperate Housewives*, plaintiff's "access" evidence is simply too speculative. *Rice*, 330 F.3d at 1179; *Jorgensen*, 351 F.3d at 53; *McGaughey*, 12 F.3d at 62; *Ferguson*, 584 F.2d at 113; *Towler*, 76 F.3d at 582-83.

More importantly, Plaintiff sent her Screenplay to Paradigm <u>after</u> *Desperate Housewives* had already been written. Indeed, there is no evidence, whatsoever, that <u>anyone</u> at Paradigm provided ideas or literary materials, or had any involvement or received any credit in connection with the creation or development of *Desperate Housewives*. Thus, under *Meta-Film*, Plaintiff's speculation, as a matter of law, is insufficient. *See Ferguson*, 584 F.2d at 113; *Hofmann*, 790 F. Supp. at 507-08.

### 4.    <u>No "Striking Similarity" Exists To Create An Inference Of Copying In Fact</u>

While "striking" similarities may give rise to an inference of access, they may give that inference only where the defendant's work is "so strikingly similar <u>as to preclude the possibility of independent creation</u>." *Meta-Film*, 586 F. Supp. at 1355 (emphasis added); *see Towler*, 76 F.3d at 583-84 (an "exacting standard"); *Ferguson*, 584 F.2d at 113-14; *Hofmann*, 790 F. Supp. at 508-10.

"Striking similarity" does not mean <u>many</u> similarities. *Selle v. Gibb*, 741 F.2d 896, 903 (7th Cir. 1984). Rather, it is a level of similarity that "goes far beyond the measure for substantial similarity required for the second element of a copyright claim." *Hofmann*, 790 F. Supp. at 508; *see also Towler*, 76 F.3d at 585; *Meta-Film*, 586 F. Supp. at 1355. The similarities must be such that they "can only be explained by copying, rather than by coincidence, independent creation, or prior common source." *Selle*, 741 F.2d at 904 (cited in *Baxter v. MCA, Inc.*, 812 F.2d 421, 423-24 (9th Cir. 1987)). This requires work that are "in virtually every detail . . . identical" (*Hofmann*, 790 F. Supp. at 508-10) <u>after</u> first filtering out "similarities" that pertain to unprotectable elements, or that could have arisen as the result of "the possibility of [a] prior common source." *Selle*, 741 F.2d at 904-05; *Hofmann*, 790 F. Supp. at 508-10.

1  Here, the works are patently <u>not</u> "identical," and similarities based on unprotectable

2  facts, ideas, scenes-à-faire arising from common subject matter and convention of

3  storytelling and filmmaking – to the extent that they may exist – nonetheless fail to

4  support the conclusion that independent creation of *Desperate Housewives* was

5  "impossible."

### 5.    **Evidence Of Independent Creation Rebuts Any Possible Inference of Copying**

8  Independent creation is not an affirmative defense; it is just another way of

9  stating that there was no copying from plaintiff.  *Granite Music*, 532 F.2d at 720;

10  *Calhoun v. Lillenas Publ'g.*, 298 F.3d 1228,1233 (11th Cir. 2002) (affirming summary

11  judgment on independent creation grounds).  Furthermore, any inference of actual

12  copying that arises from a combination of similarity and access is rebuttable.  Under

13  Federal Rule of Evidence 301, such a presumption disappears in the face of contrary

14  evidence.  *Keeler Brass Co. v. Continental Brass Co.*, 862 F.2d 1062, 1066 (4th Cir.

15  1988).  Thus, even if it could be argued successfully that there is sufficient evidence to

16  establish "access" and substantial similarity, the evidence of independent creation

17  would still support a summary judgment of no actual copying. See Statement at ¶¶ 10

18  and 11.

19  The evidence in this case of Defendant Cherry's independent creation of

20  *Desperate Housewives* <u>before</u> Plaintiff Bernal even contends she mailed her

21  "Homeless" screenplay to Defendant Paradigm is uncontroverted.

## VII.    **CONCLUSION**

23  For all of the foregoing reasons, this Motion should be granted, and Judgment

24  should be entered for Defendants.

25  DATED:  October 29, 2008

JOEL MCCABE SMITH
LEOPOLD, PETRICH & SMITH
A Professional Corporation
Attorneys for Defendants Marc Cherry
and American Broadcasting Companies,
Inc.